**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDWARD JUNG ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Civil Action No. 2018-CV-_____ |
| v. ) | |
| ) | |
| BURLINGTON NORTHERN SANTA FE ) | |
| RAILWAY COMPANY, ) | |
| ) | |
| *Defendant*. ) | |

## COMPLAINT

Plaintiff, Edward Jung ("<u>Plaintiff</u>"), through his undersigned counsel, and for his complaint against Defendant, Burlington Northern Santa Fe Railway Company ("<u>Defendant</u>"), alleges the following:

### NATURE OF THE CONTROVERSY

1. This action arises from Defendant's violation of the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Genetic Information Non-Discrimination Act, and the Illinois Human Rights Act.

### THE PARTIES

2. Plaintiff, Jung, is a 68 year-old white male, is an individual citizen, and a resident of Will County, Illinois.

3. Defendant, Burlington Northern Santa Fe Railway Company, is a foreign for-profit corporation registered with the Illinois Secretary of State and doing business throughout the United States, including Cook County, Illinois.

4. At all relevant times, Defendant has been an employer within the meaning of 775 LCS 5/2-101 of the IHRA.

5. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## JURISIDCTION AND VENUE

6. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, law, or treaties of the United States.

7. Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims and the unlawful employment practices occurred in this district, Plaintiff would have worked within this district, and the Defendant does business in this district.

## BACKGROUND

8. Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") under the above-referenced statutes. That charge was also cross-filed with the Illinois Department of Human Rights.

9. On or around February 6, 2018, the EEOC issued Plaintiff a notice of right to sue letter for the charges he filed, and this lawsuit is timely filed within ninety (90) days of Plaintiff's receipt of such notice.

10. Plaintiff has complied with all federal and state law administrative requirements for filing this action.

11. Defendant has been continuously doing business in the State of Illinois and has continuously had at least fifteen (15) employees for each working day for twenty (20) or more calendar weeks within the year of and/or proceeding the alleged violation.

## FACTS COMMON TO ALL COUNTS

12. In approximately 1991, Midwest Terminal Services ("MTS") hired Plaintiff as a spotter at its Corwith yard location. In approximately 2000, after three employees were killed in the Corwith yard after contact with high power electrical sources, Plaintiff's employment was taken over by Rail Terminal Services ("RTS"). Shortly thereafter, Plaintiff became a heavy equipment operator and maintained that position through the remainder of his career. Throughout his time with MTS and RTS Plaintiff maintained his vacation, seniority, benefits and pay. Plaintiff's successful career spanned more than 19 years.

13. On information and belief, Plaintiff maintained approximately the same body mass index throughout the latter 10-15 years of his career. He was approximately 5'10" tall and weighed 202 pounds.

14. Plaintiff was frequently referred to by management over the loudspeaker in the yard and in general conversation as the MVP of the yard, for his ability to step in and perform multiple functions at a high level. He was frequently asked to train other employees.

15. In approximately April 2010, Defendant announced it was going to take over the Corwith yard location. Defendant advised Plaintiff that he would have to apply for employment with Defendant and that there would be a series of tests as part of the application process

16. Shortly thereafter, Defendant also notified Plaintiff that he was required to undergo a pre-employment aptitude test and drug test, which would be scheduled for later that month.

17. Plaintiff completed an online application for employment with Defendant in Chicago, Illinois. On information and belief, the job was substantially the same job as Plaintiff had already been performing for the previous 10 years, and it involved substantially the same duties and responsibilities, including operating heavy machinery such as cranes, side-loaders, forklifts, hostler trucks, and stack reachers.

18. In or about August of 2010, Plaintiff took and passed a pre-employment aptitude test and drug test.

19. Following these tests, Plaintiff went through an interview with a number of Defendant's personnel.

20. During the interview, it was readily apparent that Plaintiff was qualified for the job and was capable of operating all machinery in the yard safely and efficiently, as he had done for over a decade.

21. After the interview, Defendant informed Plaintiff that he had successfully completed the testing and interview process and informed Plaintiff that he was an excellent candidate.

22. On or about the same day, Defendant extended to Plaintiff a conditional offer of employment, subject to successful completion of a physical examination and hair analysis screening, background check, proof of employment eligibility, and receipt and review of a medical history questionnaire.

23. Plaintiff subsequently underwent a post-offer of employment physical capabilities test.

24. During the examination, the Defendant administered a physical capabilities test to Plaintiff, which included measuring Plaintiff's body mass index and

having him extend his legs and arms with resistance from a chair-like device multiple times.

25. Later that month, Plaintiff received the results of the physical capabilities test. The results stated simply that Plaintiff did not meet the minimum physical requirements to perform the essential functions of the position. Plaintiff was told that his right knee had failed.

26. Following a football injury in 1968, 42 years before the physical capabilities test, Plaintiff had surgery on his right knee. Plaintiff had an excellent recovery, and his right knee has never been an issue for him nor a limitation in his job duties or general life activities. Plaintiff routinely walked the yard, went up and down rail cars, and exerted himself without issue.

27. In response to the results of the physical capabilities test, Plaintiff immediately joined a gym, hired a physical trainer, and began intensive training to reduce his weight and improve his physical health.

28. Plaintiff subsequently underwent another physical capabilities test in approximately October of 2010. At that time, Plaintiff had done extensive strengthening of his right leg and lost approximately 7-10 pounds through his fitness regime. He weighed approximately 195 pounds when he was tested the second time.

29. Several weeks later, Defendant informed Plaintiff that he had failed to pass his physical capabilities re-test and that he did not meet the minimum physical demands to perform the essential functions of his job. This time Defendant told Plaintiff that his left leg was too weak.

30. Plaintiff had never had any issue with his left leg and, if anything, it was stronger than it had been before the first physical capabilities test. Defendant also told Plaintiff at this session that he needed to lose weight.

31. Defendant advised Plaintiff that he could retake the physical capabilities test again.

32. Plaintiff continued working out at the gym he had joined with a physical trainer for the next several months. He improved his strength further and lost an additional 10 pounds.

33. In December of 2010, Defendant had Plaintiff retake the physical examination for a third time. At this time, Plaintiff weighed approximately 185 pounds and was in excellent shape. Plaintiff had always worked out several times per week, but, in light of the testing, he had committed to do so even more frequently.

34. Following the third exam, Defendant again advised Plaintiff he had failed without providing Plaintiff any criteria to establish a "passing" grade. Defendant simply informed Plaintiff that he was "very close" to passing the exam.

35. Defendant advised Plaintiff that there was no offer of probationary employment as had been discussed with other employees.

36. Defendant decided not to hire Plaintiff on the basis of his perceived disability, obesity and/or a claim of leg weakness, without showing that the criteria it used to deny him employment was related to the subject position and consistent with job necessity.

37. On or about January 1, 2011, Defendant took over operations from RTS. At that time, Plaintiff was unable to continue his employment with Defendant due to the earlier physical capabilities testing.

38. Defendant's decision to rescind its offer of employment did not take into account Plaintiff's 19 year career as a successful and safe employee.

39. Defendant's decision to rescind its offer of employment did not take into account that Plaintiff's body mass index had consistently been approximately the same during the last ten (10) years of his employment.

40. Plaintiff met all other physical qualifications for the position.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. 12101, *et. seq.*, as amended
## (Disability Discrimination)

41. Plaintiff repeats and realleges Paragraphs 1 through 40 as if fully set forth and restated herein.

42. At all relevant times hereto, Plaintiff was disabled within the meaning of the ADA.

43. Plaintiff was qualified to perform the essential functions of his job, with or without a reasonable accommodation.

44. The ADA prohibits an employer from:

> "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a).

45. Defendant's decision to rescind the Plaintiff's employment offer (failure to hire) based upon his body mass index or leg weakness was a violation of the ADA in that it regarded him as disabled.

46. The effect of this practice deprived Plaintiff of equal employment opportunities and adversely affected his status as an employee through the job application procedures and hiring decisions based upon his perceived disability.

47. Defendant perceived Plaintiff to be disabled by claiming that his body mass index and/or leg weakness rendered him a health risk for "safety sensitive" positions.

48. Defendant believed such condition(s) would substantially limit one or more of Plaintiff's major life activities, including, but not limited to, performing manual tasks and working.

49. As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damages in the form of loss of back pay, both wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress.

50. Plaintiff is entitled to both general and compensatory damages in amounts to be determined at trial.

51. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrants statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

52. Plaintiff also seeks pre-judgment interest, post-judgment interest, and all costs, including reasonable attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, Edward Jung, prays that this Court enter judgment in his favor and against Defendant, Burlington Northern Santa Fe Railway Company, and asks that the Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, backpay, punitive damages, reasonable attorneys' fees, expert witness fees, costs, and any and all other such relief that this Court deems just under the circumstances.

### COUNT II
### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. 12101, *et. seq.*, as amended
### (Unlawful Screening)

53. Plaintiff repeats and realleges Paragraphs 1 through 40 as if fully set forth and restated herein.

54. At all relevant times hereto, Plaintiff was disabled within the meaning of the ADA.

55. The ADA provides that:

> "the term 'discriminate against a qualified individual on the basis of disability' includes –
>
> (6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]"

42. U.S.C. § 12112(b).

56. Defendant discriminated against Plaintiff on the basis of disability by imposing selection criteria, including medical screening that screens out, tends to screen

out, or has a disparate impact on individuals who disclose disabilities that are not shown to be job-related for the person in question and are not consistent with business necessity.

57. As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damages in the form of loss of back pay, both wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress.

58. Plaintiff is entitled to both general and compensatory damages in amounts to be determined at trial.

59. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrants statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

60. Plaintiff also seeks pre-judgment interest, post-judgment interest, and all costs, including reasonable attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, Edward Jung, prays that this Court enter judgment in his favor and against Defendant, Burlington Northern Santa Fe Railway Company, and asks that the Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, backpay, punitive damages, reasonable attorneys' fees, expert witness fees, costs, and any and all other such relief that this Court deems just under the circumstances.

### COUNT III
### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. 12101, *et. seq.*, as amended
### (Impermissible Medical Examination)

61. Plaintiff repeats and realleges Paragraphs 1 through 40 as if fully set forth and restated herein.

62. At all relevant times hereto, Plaintiff was disabled within the meaning of the ADA.

63. The ADA provides that:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4).

64. Defendant required an initial medical examination and subsequent medical examinations, and inquired with Plaintiff as to whether he is an individual with a disability, and as to the nature and severity of the disability, despite the fact that these inquiries and examinations were neither job-related nor consistent with business necessity.

65. As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damages in the form of loss of back pay, both wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress.

66. Plaintiff is entitled to both general and compensatory damages in amounts to be determined at trial.

67. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrants statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

68. Plaintiff also seeks prejudgment interest, post-judgment interest, and all costs, including reasonable attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, Edward Jung, prays that this Court enter judgment in his favor and against Defendant, Burlington Northern Santa Fe Railway Company, and asks that the Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, backpay, punitive damages, reasonable attorneys' fees, expert witness fees, costs, and any and all other such relief that this Court deems just under the circumstances.

## COUNT IV
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## (29 U.S.C. § 621, *et seq.*)

69. Plaintiff repeats and realleges Paragraphs 1 through 40 as if fully set forth and restated herein.

70. At all relevant times hereto, Plaintiff was over the age of 40 and a member of the protected class under the ADEA.

71. Defendant's claim that Plaintiff failed to meet the physical capabilities of the job he had possessed for the prior 19 years was pretextual and used by Defendant as a means to eliminate older members of the workforce.

72. As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damages in the form of loss of back pay, both wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress.

73. Plaintiff is entitled to both general and compensatory damages in amounts to be determined at trial.

74. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrants statutory punitive damages.

75. Plaintiff also seeks prejudgment interest, post-judgment interest, and all costs, including reasonable attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, Edward Jung, prays that this Court enter judgment in his favor and against Defendant, Burlington Northern Santa Fe Railway Company, and asks that the Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, backpay, punitive damages, reasonable attorneys' fees, expert witness fees, costs, and any and all other such relief that this Court deems just under the circumstances.

## COUNT V
### VIOLATION OF THE GENETIC INFORMATION NON-DISCRIMINATION ACT
**(42 U.S.C. § 21F, *et seq.*)**

76. Plaintiff repeats and realleges Paragraphs 1 through 40 as if fully set forth and restated herein.

77. At all relevant times hereto, Plaintiff was a protected employee under GINA.

78. On information and belief, Defendant took hair samples from the Plaintiff in order to conduct testing prohibited by GINA.

79. On information and belief, Defendant refused to hire Plaintiff as a result of the results of the improper testing it performed.

80. As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damages in the form of loss of back

pay, both wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress.

81. Plaintiff is entitled to both general and compensatory damages in amounts to be determined at trial.

82. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrants statutory punitive damages.

83. Plaintiff also seeks prejudgment interest, post-judgment interest, and all costs, including reasonable attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, Edward Jung, prays that this Court enter judgment in his favor and against Defendant, Burlington Northern Santa Fe Railway Company, and asks that the Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, backpay, punitive damages, reasonable attorneys' fees, expert witness fees, costs, and any and all other such relief that this Court deems just under the circumstances.

## COUNT VI
### VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
### 775 ILCS 5/1-101
### (Impermissible Medical Examination)

84. Plaintiff repeats and realleges Paragraphs 1 through 40 as if fully set forth and restated herein.

85. At all relevant times hereto, Plaintiff was disabled within the meaning of the IHRA, 775 ILCS 5/1-103(I).

86. Plaintiff was qualified to perform the essential functions of his job, with or without a reasonable accommodation.

87. The IHRA provides that it is a civil rights violation for an employer to:

> "to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination."

775 ILCS 5/2-102(A).

88. Defendant's decision to rescind the Plaintiffs employment offer (i.e. failure to hire) based upon his body mass index, and/or leg weakness, was in violation of the IHRA in that it regarded him as disabled.

89. The effect of this practice deprived Plaintiff of equal employment opportunities and adversely affected his status as an employee through the job application procedures and hiring decisions based upon his/her perceived disability.

90. Defendant perceived Plaintiff to be disabled by claiming that his body mass index or leg weakness rendered him a health risk for "safety sensitive" positions.

91. Defendant believed such condition(s) would substantially limit one or more of Plaintiff's major life activities, including, but not limited to: performing manual tasks and working.

92. As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damages in the form of loss of back pay, both wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress.

93. Plaintiff is entitled to both general and compensatory damages in amounts to be determined at trial.

94. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrants statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

95. Plaintiff also seeks pre-judgment interest, post-judgment interest, and all costs, including reasonable attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, Edward Jung, prays that this Court enter judgment in his favor and against Defendant, Burlington Northern Santa Fe Railway Company, and asks that the Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, backpay, punitive damages, reasonable attorneys' fees, expert witness fees, costs, and any and all other such relief that this Court deems just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims to triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

Dated: May 7, 2018

By: /s/ Robert D. Sweeney
Robert D. Sweeney
John J. Scharkey
Zachary M. Slavens
Sweeney & Scharkey, LLC
111 West Washington Street
Burnham Center, Suite 1160
Chicago, Illinois 60602
Tel. (312) 384-0500

*Counsel for Plaintiff Edward Jung*